May it please the Court, Rolf Stadheim for the appellant, Dr. Flamm. Let me just, just housekeeping. We've got two cases back-to-back and they have the same parties involved, but just to confirm that they're entirely different patents, different arguments, different legislations. That's correct, Your Honor. The issue here pertains to the first two Graham factors, the scope of the prior art and the differences between the prior art and Claim 1 of the patent in suit. The standard of review is whether there is substantial evidence to support the finding below that Lieberman and Sheehan or the combination of Lieberman and Sheehan teach or suggest all the elements of Claim 1. Our contention, in accordance with the definitions of substantial evidence, is that there is not, quote, such relevant evidence as a reasonable mind might accept as adequate to support the conclusion when the record is considered as a whole. The evidence being what the prior art says. Is that right? Yes. And also expert testimony? I'm sorry? And also expert testimony explaining what the prior art teaches? Certainly. Okay. This is a very unusual case. The crucial prior art references, Lieberman and Sheehan, are explicitly clear as to what they teach. But the decision below, relying entirely on Appley's expert, found that they teach something quite different and completely foreign to the actual teachings of the references themselves. So is that the essence of this case, under the substantial evidence review, whether or not the board correctly considered what the prior art taught? Is that correct? Correct. Okay. Correctly considered means they considered it fully, but they didn't understand it. Is that correct? Exactly. Okay. Consider the following. One, Lieberman and Sheehan both teach using an isolation transformer. Two, Lieberman and Sheehan both teach that using an isolation transformer results in a reduction in unwanted capacitive time. Three, neither Lieberman nor Sheehan states or suggests that reduction of unwanted capacitive currents can be achieved other than by use of an isolation transformer or the prior art approach of using an electrostatic shield. Four, regarding the limitations of Claim 1 of the Patent and Suit, Lieberman, Sheehan, Dibble do not state or teach anything, A, about phase and antiphase portions of capacitive currents, B, about selectively balancing phase and antiphase portions of capacitive currents, and C, about a wave adjustment circuit for balancing phase and antiphase portions of capacitive currents. Five, the entirety of the decision below is based on petitioner's expert, not the actual content of the Lieberman reference. We now turn to comparing the processes of Claim 1 and Lieberman and Sheehan. Because Lieberman and Sheehan employ an isolation transformer, the path of the capacitive current is not to the substrate walls, etc. Instead, the current flows from the coil to the plasma and then returns to the coil. Since the current cannot go to ground, it must return to the coil. This is a straightforward application of Kirchhoff's Current Law, which states that current going out of any node must equal the current returning to that node. The decision, Apalis, and Apalis experts all affirmatively agree that the capacitive currents in Lieberman flow into the plasma and return from the plasma. Quoting from the decision, the phase voltages push capacitive couple of current into the plasma, while the antiphase voltages pull a couple of current out of the plasma. However, the patent suit claims that the capacitive currents flow from the coil to the substrate, chamber walls, etc. And interesting, the decision below at one point agrees, correctly stating, quote, According to the 221 patent, this process provides for a technique that is substantially free from stray or parasitic capacitive couplings. You want to give us a citation to that quote? That is pages 4 and 5 of the decision. And I apologize, I didn't put down the appendix number. Continuing on, for example, from the plasma source to the chamber bodies, substrates, walls, etc. The upshot is that these findings regarding the processes of Claim 1 and Lieberman and Sheehan are irreconcilable with the finding that Lieberman teaches all the elements of Claim 1. If there are any questions, I'll be glad to answer them. I hear what you're saying. It sounds like you have a different view of what the prior teaches than what the expert presented to the board. And you've said that the board erred in relying on the expert testimony and it's understanding the experts explanation of what those references teach. But I haven't heard exactly how there was error yet. And what exactly the expert said that was incorrect and that the board shouldn't have credited. And it also makes me puzzled as to what I'm supposed to do with that sitting here on appeal. Okay, I think the key there is the law. That substantial evidence is not taken by itself. It has definitions that we look to. The definition of substantial error is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion. And then in another case, when the record is considered as whole. Now, our point is that if you look at the actual references, you just have to read them and understand that if you have an isolation transformer, that means it is not grounded. And so the capacitive currents can't go to the substrate walls, et cetera, which is what the patent claims. The capacitive current goes out into the plaza and then encoded in the Kirchhoff. It comes right back into the plaza. So I don't think it really makes any difference what the expert had to say. You just look at that and it's clear. It pleased the court. Dr. Flem's presentation on appeal suffers from the same flaw that it did before the board. You have here on the one side, as your honors alluded to, you have the teachings of the prior art. You have expert testimony about what the prior art discloses that is backed up by additional documentary reference in the form of the other exhibits that we relied on. And you have the 221 patent itself. All of those say one thing. And on the other side, you have Dr. Flem's bare say so that none of that is right, that you have to ignore all of that. I'll start specifically with the reference to what Lieberman and Qian teach about the effect of using an isolation transformer. I want to first point out, we do think this argument is waived. Before the board, what Dr. Flem argued was that if you use an isolation transformer, you can't have any reduction in the relevant capacitive currents at all. Now on appeal, he appears to be arguing, and this was not clearly made until his reply brief, but I think what he's arguing is that the reduction happens, but it's due to isolation, not to balancing as the patent claims. That's simply wrong. If you look at the relevant page of Lieberman, this is at appendix 922. And what it says is, the coil can be driven push-pull using a balanced transformer, which places a virtual ground. Oh, I'm sorry. It's all right. Just 922. 922, correct. And I'm starting at the top line of the text. The coil can be driven push-pull using a balanced transformer, which places a virtual ground in the middle of the coil and reduces the maximum coil to plasma voltage by a factor of two. So that is describing the selective balancing. It's describing you use this balanced transformer with two inputs. It puts two inputs onto each end of the coil that are opposite in phase. They are 180 degrees apart from each other in phase. Doing so, this reduces the undesired capacitively coupled RF current flowing from coil to plasma by a factor of two. That is exactly what Dr. Graves said and relied on. That's backed up by additional citations that I can give you. And that's what the board found. What Dr. Flam points to is back at Appendix 911. That's talking about a totally different configuration. Here, Lieberman is talking about using a helical mode, not the inductive configuration that is at 922, and that is what the patent expressly claims. It's not relevant what he says here, but even if it were, it doesn't say anything that is in tension with the rest of Lieberman or with Dr. Graves or with the board's findings. It says here, too, the antenna can be driven through a balanced transformer, that is what the patent also calls a ballon, so that the antenna coil is isolated from ground. There is no inconsistency between an isolation transformer and a ballon. The record makes that clear. It's two different functions that the transformer is forming. It's serving as a ballon because it takes an unbalanced input and turns it into a balanced output. It's serving as an isolation transformer because within itself it isolates the secondary coil, which is the outputs, from the primary coil, which is the inputs. Lieberman says this reduces the maximum antenna plasma voltage by a factor of two, thus also reducing the undesired capacitive current. He is not saying that the reduction in undesired capacitive current is coming from isolation. He's saying it's coming from the use of a balanced transformer that is also isolated. So it's not a faithful reading of what the prior discloses. It's also irrelevant. The claim here says nothing about reducing capacitively coupled current. Claim one has two relevant requirements. One is selectively balancing the currents on the coil, and the other is using a wave adjustment circuit to do that. It says nothing about reducing, let alone eliminating, capacitively coupled current. The 221 patent teaches that as an advantage of this configuration, but it is not claimed. So for each of those reasons, the material that they rely on from Lieberman simply is not relevant and certainly does not undermine the substantial evidentiary support for the board's findings. I'd also like to address the other point that was made about capacitive coupled current going into the plasma and back into the coil and therefore never reaching the substrate. There's no record support for that other than Dr. Pham's statement, which did not cite anything for that point. The references do not say that. In fact, Qian empirically demonstrates that when you use that isolation transformer in a balanced mode, you get a reduction of capacitive coupling to the substrate. And so there obviously is capacitive current going not just back into the coil, but into the process as well. Thank you. I beg to differ. Yeah, go ahead. First of all, if you look at Lieberman, there's a passage where he defines what a balanced transformer is. And he says it is an isolation transformer. What about this language where it says the coil can be driven push-pull using a balanced transformer? It's talking about push-pull. That comes from the expert. I think it's in the reference. It's on page A922. 922 of the appendix? I just read from that. I didn't read from the expert. What does 922? It says the coil can be driven push-pull using a balanced transformer. Right. That was after Lieberman had defined what a balanced transformer, or what a balanced transformer, as opposed to a balanced. I heard Chief Judge Probst ask you for a cite for that. I'm sorry, I don't have that, but I'd be glad to give it to the court afterwards. So the point is that Lieberman tells you what a balanced transformer is. It's an isolation transformer. An isolation transformer is not the same as a balanced. A balanced is grounded. An isolated transformer is not grounded. And counsel said that in Sheehan that the capacitive current goes from the coil into the plasma to the substrate. That's absolutely wrong. It can't go to the substrate because it's not grounded. It has to go into the plasma and back to the substrate. I mean back to the plasma. I'm sorry, the coil. So it goes from the coil to the plasma to the coil. And the patent says that it goes from the coil to the substrate, walls, chamber, et cetera. Very different, and it doesn't fit with what the decision below states. So you're telling us that these judges on the PTAB misunderstood that. Absolutely. Okay. Frankly, when you read the opinion, I think what happened is they decided who was going to win, and they picked up everything from the expert testimony, and they rejected everything from our testimony. Thank you. Thank you. We thank both sides, and the case is submitted. Next case is 182384, flam versus micron technology. Mr. Sheehan, you get to stay where you are.